June 15, 2018

The Honorable Joseph C. Spero
San Francisco Courthouse
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

**Re:     In re DMCA Subpoena to StarMaker Interactive Inc., Case No. 3:18-MC-80075-JCS**

Dear Judge Spero,

Pursuant to your honor's Standing Order on Discovery Disputes, Ariyanti Danuritiyas ("Danuritiyas") and StarMaker Interactive Inc. ("StarMaker") file this joint letter to resolve a dispute over a subpoena served by Danuritiyas on StarMaker pursuant to 17 U.S.C. § 512(h) (the "DMCA Subpoena") and issued by the Court on May 2, 2018.  *See* Dkt. No. 4.  The parties have met and conferred over a stipulated protective order to facilitate StarMaker's anticipated response to the DMCA Subpoena, which included an in-person meeting involving lead counsel on June 8, 2018, but have reached an impasse on several issues.  Attached hereto as **Exhibit A** is a copy of a protective order (the "Protective Order") that sets forth the language that the parties have agreed upon and, where bracketed and highlighted, the parties' positions and, if applicable, proposed compromises on the disputed issues.

A. Danuritiyas's Positions

Danuritiyas requests that the Court order StarMaker to produce information sufficient to identify the alleged infringer in response to the DMCA Subpoena and allow for Smule, Inc. ("Smule") to see the information.  Smule is assisting Danuritiyas with the investigation of copyright infringement of works that were originally posted on Smule's platform but later appeared on Starmaker's platform without Danuritiyas's permission.  There is no legal basis for StarMaker to withhold this information from Danuritiyas or from Smule – and the alleged infringer has not objected to this information's disclosure. If the Court is inclined to enter a protective order,  Danuritiyas asks that the Court enter the Protective Order containing her proposed language in the disputed sections, as this language is consistent with the law and her rights under 17 U.S.C. § 512(h).

Danuritiyas is the owner of a copyright to musical compositions that she allowed to be posted on an app operated by Smule.  The Smule app, in simple terms, allows users to create karaoke-like performances using their mobile devices.  Users like Danuritiyas create and post compositions – lyrics and backing tracks for karaoke performances – on the Smule platform that others can then perform using the app. Under the Smule terms of service, Smule users retain ownership of the musical content they post on the Smule platform.  StarMaker operates a competing app.  Danuritiyas made a number of compositions available through the Smule app.  Danuritiyas learned that several of these compositions were later posted on the StarMaker app without her permission.[1]  As the content was originally only made

---

[1] Indeed, Smule discovered that hundreds of compositions posted by Smule users (like Danuritiyas) on the Smule platform were re-posted without the users' permission on StarMaker.  Smule received complaints from a number of those users, who urged Smule to take action to protect their rights.  Smule's investigation uncovered evidence of suspicious activities earlier this year wherein someone had been accessing Smule's servers and downloading extensive Smule content. Smule believes the attacker behind these attacks is affiliated with StarMaker and had been using software (or bots) to copy (or scrape) massive amounts of data from Smule's systems by circumventing technological measures that restricted access to the content. In addition, Smule has identified hundreds of (what appear to be) fake Smule user accounts that were opened and used for

June 15, 2018
Page 2

available on Smule, Danuritiyas requested the assistance of Smule to protect her rights.  Danuritiyas ultimately authorized Smule to assist her in pursuit of her copyright rights.

On May 2, 2018, at Danuritiyas's request, the Court issued the DMCA Subpoena, which orders StarMaker to produce information relating to the identity of the person who allegedly infringed Danuritiyas's copyright to one particular composition.  StarMaker served objections to the DMCA Subpoena on May 17, 2018, but has yet to produce any responsive information on the purported ground that all such information is confidential and cannot be produced absent a proactive order that prohibits the information from being shared with anyone at Smule.

Importantly, before the Court even reaches the question of a protective order, StarMaker cannot make any showing that this information is confidential.  *First,* the information at issue is the *user*'s information, and Starmaker makes clear to users that it has no ability to protect their data.  StarMaker's privacy policy specifically forecasts instances such as this and notifies its users that "[w]e can disclose any information about you to … private parties as we, in our sole discretion, believe necessary or appropriate to respond to claims and legal process …" *See* https://www.starmakerstudios.com/#/privacy. The sole objector here is StarMaker.  *Second,* StarMaker has not established that any information it intends to produce in response to the DMCA Subpoena is confidential such that it could be properly designated as subject to a protective order.  Indeed, StarMaker has refused to disclose, even in general terms, the categories of responsive information that it contends are confidential.  Nevertheless, Danuritiyas agreed to negotiate a protective order to facilitate the subpoena response and reserves the right to challenge any unwarranted confidentiality designations.

To the extent any protective order is warranted, the parties have reached an impasse on two issues: (1) whether information designated as subject to the protective order can be used for any purpose under the Copyright Act, which is found at Title 17 of the United States Code ("Title 17"), and (2) whether such information can be shared with Smule.

The first disputed issue, which is found within the Protective Order in Sections 1 and 7.1, is easily resolved.  The statute expressly states that information produced in response to a subpoena may be used "for the purpose of protecting rights under this title," *i.e.*, Title 17.  17 U.S.C. § 512(h)(2)(C).  StarMaker has provided no reasoned basis for further limiting the use of responsive information to only the purposes contemplated under one particular section of Title 17, *i.e.*, § 512(h).  This proposed limitation is unnecessary, confusing and contrary to the law.

The second and primary disputed issue, found within the Protective Order in Section 7.2 (and relatedly in Sections 2.3 and 2.7), is whether Danuritiyas may share the subpoenaed information with Smule.  As a compromise, Smule has already agreed to limit the number of people at Smule who have access to the information and for them to sign onto the Protective Order.  That should resolve any legitimate concerns about confidentiality.  In fact, during the meet and confer process, StarMaker's counsel proposed a protective order under which *some* categories of information could be shared with a limited number of people at Smule (e.g., the alleged infringer's address, email address, and IP address, to the extent they exist).  Smule agreed to that proposal, but StarMaker apparently rejected its own counsel's proposal.  StarMaker's position is that no one from Smule should be able to receive any information produced in response to the subpoena, under any circumstances.  This position has no basis in the law.

---

limited periods of time to conduct some of the massive downloads.  Two other subpoenas have been served for aggrieved Smule users.  The parties have agreed to resolve similar disputes based upon this Court's ruling with respect to Danuritiyas.

June 15, 2018
Page 3

First, the statute envisions that third parties may receive responsive information to assist the copyright holder, as Smule is doing here.  *See* 17 U.S.C. 512(h)(3), (5) (requiring service providers to "expeditiously disclose" information responsive to the subpoena "to the copyright owner ***or person authorized by the copyright owner***" (emphasis added)).  Indeed, Smule's access to responsive information is necessary to allow Danuritiyas to protect her own rights under Title 17.  Smule runs the platform from which Danuritiyas's content was stolen and will need to be provided with the alleged infringer's identifying information in order to investigate whether and how that person accessed and/or copied the infringed content on Smule's systems.  Moreover, Danuritiyas is an individual residing in Indonesia.  Smule is located within the United States and has more resources with which to pursue a copyright claim on her behalf, which is precisely why Danuritiyas signed a common interest agreement with Smule.

Second, the statute does not prohibit the subpoenaing party from sharing responsive information with third parties who may also have rights against the alleged infringer under Title 17.  Section 512(h) requires only that the information be used to protect "rights" under Title 17, not that it be used to protect solely the subpoenaing party's rights under Title 17.  If Smule used information disclosed pursuant to this subpoena to protect its own rights under Title 17 (for example, 17 U.S.C. § 1201, which prohibits circumvention of technological measures that effectively control access to copyrighted works), that use would be proper.

Finally, StarMaker's reliance on *Signature Management Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145 (N.D. Cal. 2013), the sole authority it has cited during the parties' discussion, is misplaced.  The ruling in *Signature Management* arose out of a First Amendment objection to the subpoena by an objecting user, neither of which is at issue here.

B.  StarMaker's Positions

As an initial matter, Smule is wrong that StarMaker's information is not confidential.  The categories of information StarMaker stores related to its users is commercially sensitive material, which should be particularly evident from the recent scandals involving Facebook and Cambridge Analytica.  The fact that the information requested is limited to a particular user in this instance does not remove the confidential status, particularly in light of Smule's involvement with multiple subpoenas and allegation that there are "massive downloads" at issue.[2]  *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684-85 (N.D. Cal. 2006) (finding even limited disclosures of search indexes or query logs to be at least somewhat commercially sensitive, including because of the ability of competitors to estimate information about users).  The commercial sensitivity is particularly significant where StarMaker's direct competitor is seeking this information, and is seeking even more information through additional subpoenas.

StarMaker has informed Danuritiyas/Smule that it does not have the identity of the alleged infringer, nor does it contend that Danuritiyas cannot share the identity with Smule once determined using information produced in response to the subpoena.  Counsel for StarMaker proposed a compromise where StarMaker would allow Smule access to an email address and an IP address of the alleged infringer, but StarMaker would be able to designate some other information as outside-counsel only, subject to challenges of the

---

[2] Prior to the service of the DMCA subpoena, Smule has sent demand letters to StarMaker alleging that StarMaker is behind these alleged "massive downloads."  StarMaker has firmly denied these allegations, requesting that Smule provide any evidence that StarMaker is involved so that StarMaker can respond.  Smule has thus far provided nothing but allegations based on user content uploaded to StarMaker's platform.  Smule continues to assert that StarMaker must prove its innocence by turning over its information.

designation by Danuritiyas.  Under this proposal, Danuritiyas and Smule would get access to information that could be used to identify the alleged infringer.  But Danuritiyas/Smule would not accept this proposal absent a disclosure of the categories of information StarMaker intended to produce (the very information that StarMaker informed them is confidential), which suggests that the desire for Smule to gain access to StarMaker's confidential information exceeds identifying the alleged infringer.[3] This whole exercise appears to be Smule's fishing expedition into StarMaker's business so that Smule can gain a competitive advantage, rather than to genuinely seek the identity of the alleged infringer.

As to the first disputed issue, Danuritiyas/Smule misrepresents the dispute.  The dispute boils down to whether the information can be used for Smule's rights (as Danuritiyas contends) or only for the purported copyright owner's rights as contemplated under the section authorizing the subpoena.  *See* 17 U.S.C. § 512(h)(2)(C); *see also Signature Management Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1157 (N.D. Cal. 2013) (Spero, J.) ("The DMCA subpoena is to be used **solely for the purposes of protecting the serving party's rights** in its copyright.") (emphasis added).[4]  StarMaker does not dispute that the purposes contemplated under 17 U.S.C. § 512(h) extend to the purported copyright owner's rights under Title 17.  Rather, Danuritiyas/Smule's position seeks to extend the use of the information to purported claims based on Smule's rights, exceeding the clear intended purpose of the DMCA subpoena provision.  StarMaker's proposed language in Sections 1 and 7.1 of the proposed Protective Order is intended to capture this purpose, but StarMaker is open to modifications that clearly limit the use to the purported copyright owner's rights.

As to the second disputed issue, Danuritiyas (and Smule) argue that Smule should have access to confidential information produced by StarMaker because Danuritiyas has authorized Smule to act on her behalf and because Smule has interests under Title 17 that it intends to use the information for. Danuritiyas (and Smule)'s position is contrary to the plain language of 17 U.S.C. § 512(h) and seeks to broaden the limited scope of an extrajudicial subpoena process.

The purpose of the DMCA subpoena process is intended for a copyright owner to discover the identity of an alleged infringer of the copyright owner's work and to use the identity information for enforcement of its rights under Title 17.  *See* 17 U.S.C. § 512(h)(1) ("a subpoena to a service provider **for identification of an alleged infringer**"); *Signature Management Team*, 941 F. Supp. 2d at 1157 ("The DMCA subpoena is to be used **solely for the purposes of protecting the serving party's rights** in its copyright.") (emphasis added).  The application process requires "a sworn declaration to the effect that **the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer** and that such information [*i.e.*, the identity of the alleged infringer] will only be used for the purpose of protecting rights under [Title 17]."  17 U.S.C. § 512(h)(2)(C).  The application for the DMCA subpoena in the present action contains a declaration, but only discloses that the subpoena was sought on behalf of Danuritiyas.  ECF Docket Entry No. 3.  The declaration does not even mention Smule.  *Id.*

Danuritiyas (and Smule) attempt to rely on the reference of "person authorized to act on the owner's behalf" in sections 512(h)(3) and (5), but those sections refer to the same person as section 512(h)(1). Compare 17 U.S.C. 512(h)(1)("A copyright owner or *a person authorized to act on the owner's behalf*

---

[3] Smule now claims to have accepted this proposal, but previously stated that they needed to know the categories of information before they could agree—the very information StarMaker had already informed them was confidential.
[4] While this case involved a First Amendment objection to a DMCA subpoena, this case also presents a clear and relevant interpretation of 17 U.S.C. § 512(h).  Danuritiyas/Smule have failed to present any case law contradicting this interpretation or providing support for authorizing the use of information from a DMCA subpoena for a third party's rights.

may request the clerk . . . to issue a subpoena") (emphasis added) with 17 U.S.C. 512(h)(3) and (5) ("*the* copyright owner or *person authorized by the copyright owner*") (emphasis added).  Notably, sections (3) and (5) do not contain a separate article ("a") before "person authorized."  Since Smule did not make the request to the clerk, Smule cannot be the "person authorized by the copyright owner" in sections (3) and (5).

Moreover, the reference to "a person authorized to act on the owner's behalf" merely recognizes that copyright owners (like Danuritiyas) may retain legal counsel (such as Goodwin) to deal with the subpoena on the owner's behalf.  There is no basis to conclude that the reference to authorized representatives somehow confers a right to information upon <u>third-parties</u> like Smule.  Such a reading is inconsistent with the express language of section 512, which allows the <u>copyright owner</u> to obtain information to identify those who may have infringed his or her protected work, not the rights of a third party.

Danuritiyas/Smule's position simply fails to account for the fact that <u>Smule is StarMaker's competitor</u>. Danuritiyas/Smule's proposal in the attached exhibit to limit the number of people at Smule who would have access to the information fails to resolve StarMaker's legitimate concerns about its confidential information <u>ending up in the hands of its competitor</u>.  Notably, their proposal does not even limit the people at Smule to in-house counsel.

Additionally, Danuritiyas/Smule's position that Smule should be able to assist because Danuritiyas is a foreign individual without the resources to pursue a claim on her behalf is unavailing.  Danuritiyas is represented by a large law firm (Goodwin) that can properly pursue claims on her behalf <u>without disclosing the information to StarMaker's competitor</u>.  To the extent the argument is that Smule is paying her legal fees, but would not do so without access to the information, that still does not support the position that Smule should be able to get access to StarMaker's confidential information.

Furthermore, Danuritiyas/Smule's position that Smule needs the identifying information to investigate how the alleged infringer accessed and/or copied the infringed content from Smule's systems is also unavailing.  First, the accessing and copying of information from Smule's systems occurred on Smule's own platform, and related information is in Smule's possession, not StarMaker's.  Second, as discussed above with respect to the first dispute, it would be improper to use the information for Smule's rights. Moreover, StarMaker does not contend that the identity of the alleged infringer is confidential, once discovered.  StarMaker has even presented a compromise where Smule would be able to access an email address and an IP address of the alleged infringer.  To the extent Smule has a legitimate claim against the alleged infringer, it can assert its claims against the alleged infringer and pursue the information through a proper procedure.  This is simply a thinly-veiled attempt to perform an end-run around the proper discovery process for Smule's purported claims.

Respectfully, StarMaker's proposals for Sections 7.2, 2.3, and 2.7 of the proposed Protective Order properly prevents disclosure of StarMaker's confidential information to StarMaker's competitor (Smule) and should be adopted by the Court.

Sincerely,                                                    Sincerely,


/s/ I. Neel Chatterjee                              /s/ Jack Shaw
I. Neel Chatterjee                                    Jack Shaw
Counsel for Ariyanti Danuritiyas          Counsel for StarMaker Interactive Inc.