PAGES 1 - 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOSEPH C. SPERO

IN RE: IN RE DMCA SUBPOENA TO     )
STARMAKER INTERACTIVE INC.       )
                                       )
                                       ) NO. 18-MC-80075 JCS
                                       )
                                       ) SAN FRANCISCO, CALIFORNIA
_____) FRIDAY, JULY 20, 2018

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  10:37 A.M. - 11:15 A.M.**

**APPEARANCES:**

| | |
|---|---|
| **FOR ARIYANTI**<br>**DANURITIYAS** | GOODWIN PROCTER LLP<br>601 MARSHALL STREET<br>REDWOOD CITY, CALIFORNIA 94063<br>   **BY:**  **INDRA NEEL CHATTERJEE, ESQUIRE**<br>        **BRENDAN EUGENE RADKE, ESQUIRE** |
| **FOR RESPONDENT**<br>**STARMAKER** | KASOWITZ BENSON TORRES LLP<br>333 TWIN DOLPHIN DRIVE<br>SUITE 200<br>REDWOOD SHORES, CALIFORNIA 94065<br>   **BY:**  **JONATHAN K. WALDROP, ESQUIRE**<br>        **JACK SHAW, ESQUIRE**<br>        **GURTEJ SINGH, ESQUIRE** |

*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*

```
1   FRIDAY, JULY 20, 2018                        10:37 A.M.

2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                          ---O0O---

6

7                        PROCEEDINGS

8           THE CLERK:  CALLING CIVIL CASE 18-MC-80075, IN RE:

9   DMCA SUBPOENA TO STARMAKER INTERACTIVE, INC.

10          COUNSEL, PLEASE COME TO THE PODIUMS AND STATE YOUR

11  APPEARANCES.

12          THE COURT:  OH, MY GOD.  IS THIS A TRIAL OR

13  SOMETHING?

14          MR. CHATTERJEE:  IT'S A TRIAL.  JUST WEIGHTY, WEIGHTY

15  ISSUES, YOUR HONOR.

16          THE COURT:  GOOD.  I HAVE LOTS OF QUESTIONS.

17          MR. CHATTERJEE:  GOOD MORNING, YOUR HONOR.  NEEL

18  CHATTERJEE AND MY COLLEAGUE BRENDAN RADKE ON BEHALF OF ARIYANTI

19  DANURITIYAS AND SMULE, INC.

20          MR. WALDROP:  GOOD MORNING, YOUR HONOR.  JONATHAN

21  WALDROP FROM KASOWITZ, BENSON, TORRES ON BEHALF OF STARMAKER

22  INTERACTIVE.

23          I DO NOT HAVE THE PRIVILEGE, YOUR HONOR, OF ARGUING

24  THIS MATTER.  INSTEAD, YOUR HONOR, ONE OF MY COLLEAGUES AND

25  ASSOCIATE AT THE FIRM, JACK SHAW, WILL HAVE THE HONOR OF GOING
```

 1    AGAINST NEEL, WHO I KNOW VERY WELL, YOUR HONOR.  WE'RE MINDFUL

 2    OF THE DISTRICT COURT'S ENCOURAGEMENT OF HAVING YOUNGER LAWYERS

 3    HAVE OPPORTUNITY TO ARGUE MOTIONS, YOUR HONOR, SO WE'RE TAKING

 4    THAT OPPORTUNITY NOW, YOUR HONOR.

 5            **THE COURT:**  OH, WONDERFUL.

 6            **MR. CHATTERJEE:**  YOUR HONOR, I ALSO WANTED TO

 7    INTRODUCE THE GENERAL COUNSEL OF SMULE, SHARON SEGEV.  WE

 8    WEREN'T SURE UNDER YOUR ORDER WHETHER YOU WANTED SOMEBODY FROM

 9    THE COMPANY HERE OR NOT.

10            **THE COURT:**  (INDISCERNIBLE.)

11            **MR. CHATTERJEE:**  SO OUT OF ABUNDANCE OF CAUTION, WE

12    BROUGHT HER.

13            **THE COURT:**  I'M GLAD TO HAVE YOU HERE.

14            **MS. SEGEV:**  THANK YOU.

15            **THE COURT:**  AND WELCOME.  WELCOME.  YES, SIR?

16            **MR. WALDROP:**  THANK YOU, YOUR HONOR.  WE ALSO HAVE

17    OUR COLLEAGUE, GURTEJ SINGH, WHO IS AN ASSOCIATE IN OUR OFFICE

18    AS WELL, YOUR HONOR.  THANK YOU.

19            **THE COURT:**  WELCOME, MR. SINGH.

20            WELCOME.

21            **MR. SHAW:**  THANK YOU, YOUR HONOR.

22            **THE COURT:**  SO THERE'S HARD ISSUES AND EASY ISSUES.

23    I THINK OF THE RESTRICTIONS OF THE PURPOSES SHOULD BE FOR

24    PROTECTING RIGHTS UNDER TITLE 17 AND NOTHING NARROWER, THAT'S

25    EASY.

```
1              THE HARDER ISSUE -- AND I'M NOT -- I THINK IT'S

2    ACTUALLY PRETTY EASY -- IS WITH WHAT INFORMATION SMULE SHOULD

3    HAVE ACCESS TO.  THAT'S THE HARDER ISSUE.  AND WITH RESPECT TO

4    THAT, THE QUESTION IS:  WHAT DO THEY NEED TO HAVE ACCESS TO TO

5    FIGURE OUT WHO THIS PERSON IS AND HOW THEY DID IT?

6         MR. CHATTERJEE:  RIGHT, YOUR HONOR, SO OUR SUBPOENA,

7    WHICH IS PART OF THE COURT RECORD, DOCKET ENTRY NUMBER 4?

8         THE COURT:  YEAH.

9         MR. CHATTERJEE:  ACTUALLY ASKS FOR A FAIRLY NARROW

10   SET OF INFORMATION.

11        THE COURT:  THAT'S NOT MY QUESTION.  MY QUESTION IS

12   MUCH MORE PRACTICAL.  WHAT DO THEY ACTUALLY NEED OR CAN THEY DO

13   WITHOUT IN TRYING TO TRACK THIS DOWN?

14        MR. CHATTERJEE:  SO WHAT WE NEED IS WE NEED THE IP

15   ADDRESSES OF THE ACCESS INFORMATION BY THE USERS THAT WE --

16   THAT WE REQUESTED -- THE PERSON WHO'S BEEN IDENTIFIED, JENY

17   KANDOWANGKO, ANY OF THE USER INFORMATION, WHETHER THEY HAVE A

18   NAME OR EMAIL ADDRESS, WHATEVER THE REGISTRATION INFORMATION --

19        THE COURT:  EMAIL, NAME, STREET ADDRESS, REGISTRATION

20   INFORMATION.

21        MR. CHATTERJEE:  RIGHT.  SO ANY OF THE REGISTRATION

22   INFORMATION.  THIS IS BASICALLY COVERED IN TOPIC 1 OF EXHIBIT

23   A, AND IT TALKS ABOUT --

24        THE COURT:  DO YOU HAVE A COPY OF THAT?

25        MR. CHATTERJEE:  I CAN GIVE YOU A COPY, YOUR HONOR.
```

1           **THE COURT:**  OR I CAN JUST --

2           **MR. CHATTERJEE:**  IT'S DOCKET ENTRY NUMBER 4.

3           **THE COURT:**  WHAT DOCKET ENTRY?

4           **MR. CHATTERJEE:**  IT'S DOCKET ENTRY NUMBER 4, BUT I

5    CAN GIVE YOU A COPY.

6           **THE COURT:**  YOU HAVE AN EXTRA COPY, BECAUSE I WANT

7    YOU TO --

8           **MR. CHATTERJEE:**  YOUR HONOR, MAY I JUST HAND IT TO

9    YOU, OR HAND IT TO YOUR CLERK?

10          **THE COURT:**  YES.  SO YOU'RE LOOKING AT.

11          **MR. CHATTERJEE:**  IF YOU LOOK AT EXHIBIT A.

12          **THE COURT:**  GOT IT.

13          **MR. CHATTERJEE:**  IN TOPIC 1 WE HAVE ONE USER LISTED

14   IN TABLE 1, AND WE ASK FOR THE NAMES, ADDRESSES, TELEPHONE

15   NUMBERS, EMAIL ADDRESSES, CELLULAR DEVICE I.D.S, INTERNET

16   PROTOCOL ADDRESSES, IP LOGS, SERVER LOGS, AND THE PROFILE NAMES

17   ASSOCIATED WITH THIS USER.

18          SO THIS IS THE THING THAT WILL TELL US WHO IT IS

19   THAT'S DOING THIS AND WHERE IT'S COMING FROM.  AND THE REASON

20   WHY WE WANT THINGS LIKE IP LOGS AND WEB SERVER LOGS IS BECAUSE

21   SOMETIMES WHEN PEOPLE REGISTER, THEY DON'T USE THEIR REAL NAME,

22   AND SO YOU HAVE TO DO A LITTLE SLEUTHING ON LINE TO TRACE BACK

23   THE DOTS OF WHERE THINGS ARE COMING FROM.

24          CANDIDLY, YOUR HONOR, WE BELIEVE THESE ACCOUNTS WERE

25   ACTUALLY CREATED BY STARMAKER.

1          **THE COURT:**  YOU SAID THAT.  I UNDERSTAND.

2          **MR. CHATTERJEE:**  IT IS HELPFUL, AND WE HAVE USED THIS

3    ON SOME OF OUR OTHER INVESTIGATIONS ASSOCIATED WITH OUR SECTION

4    1201 CLAIM, TO KNOW ABOUT THE LENGTH OF TIME, THE DATE OF

5    CREATION, AND THE DATE OF TERMINATION.

6          NUMBER 2 IS REALLY TALKING ABOUT THE USER ACCOUNT

7    INFORMATION.  THAT IS VERY HELPFUL FOR US TO TRACE IT BACK AND

8    TO TRY AND COORDINATE IT WITH OUR OWN ACCESS INFORMATION.  AS

9    YOU CAN IMAGINE, SOMETIMES THIS IS A LOT OF DATA.  ONE OF THE

10   THINGS WE DO IS, IS WE LOOK AT OUR OWN INTERNAL INFORMATION AND

11   TRY TO COMPARE IT TO THINGS THAT THEY HAVE THERE IN ORDER TO

12   TRIANGULATE WHAT THE SOURCE OF THE CONTACT IS.  SO, AGAIN,

13   THAT'S SOMETHING THAT'S NECESSARY FOR TRACING BACK THE

14   INFORMATION.

15          I'M NOT SURE FOR EITHER OF THOSE WHAT THEY COULD SAY

16   IS ACTUALLY PROPRIETARY TO STARMAKER.

17          **THE COURT:**  NO.  IT'S A PRIVACY ISSUE.

18          **MR. CHATTERJEE:**  BUT THE USER HAS NOT RAISED AN

19   OBJECTION TO THIS, YOUR HONOR.

20          **THE COURT:**  I UNDERSTAND THAT.  I'M STILL GOING TO

21   THINK ABOUT IT.

22          **MR. CHATTERJEE:**  AND THEN THE LAST THING IS REALLY

23   TRYING TO UNDERSTAND WHEN THE POST WAS MADE, AND WHEN IT

24   OCCURRED, AND HOW IT OCCURRED.

25          **THE COURT:**  (INAUDIBLE.)  OKAY.

1          **MR. CHATTERJEE:**  AND THESE ARE ALL THINGS THAT THE

2    DMCA SPECIFICALLY CONTEMPLATES.

3          **THE COURT:**  NO, I APPRECIATE THAT.  MY QUESTION IS

4    ABOUT NEED.  YOU KNOW, SO YOU THINK AS A PRACTICAL MATTER, YOU

5    CAN'T IDENTIFY, OR YOU NEED THIS INFORMATION IN ORDER TO

6    IDENTIFY, AND YOU NEED FOR SMULE TO SEE THIS INFORMATION IN

7    ORDER TO IDENTIFY --

8          (SIMULTANEOUS COLLOQUY.)

9          **MR. CHATTERJEE:**  WE AT LEAST NEED A FEW PEOPLE,

10   INCLUDING OUR INTERNAL TECHNICAL PEOPLE.

11         **THE COURT:**  OKAY.

12         **MR. CHATTERJEE:**  BY "TECHNICAL PEOPLE," I MEAN THE

13   PEOPLE THAT ARE DEALING WITH OUR OWN IT SECURITY.

14         **THE COURT:**  SO WHICH PIECE OF THIS DOES STARMAKER

15   THINK IS GOING TO GIVE YOU -- GIVE ACCESS TO THINGS THAT ARE

16   COMPETITIVELY SENSITIVE?

17         **MR. SHAW:**  SO, YOUR HONOR?

18         **THE COURT:**  YEAH.  PLEASE (INDISCERNIBLE).

19         **MR. SHAW:**  YOUR HONOR, WE THINK THAT, FIRST OF ALL,

20   THE CATEGORIES AND THE NAMES OF THE DATA FIELDS BY THEMSELVES

21   ARE SENSITIVE BY THEMSELVES.

22         **THE COURT:**  SO I'M NOT QUITE SURE I UNDERSTAND THAT.

23         SO THEY GIVE YOU THE NAMES AND ADDRESSES -- YOU GIVE

24   THEM NAMES, ADDRESSES, TELEPHONE NUMBERS, EMAIL ADDRESSES,

25   CELLULAR DEVICES, IP ADDRESSES, IP LOGS, WEB SERVER LOGS

1   RELATED TO THIS USE OF -- USE OF THIS FOR THE USER LISTED, ET

2   CETERA, ET CETERA.  WHAT DO YOU MEAN BY CATEGORIES?  NOT THOSE

3   CATEGORIES?

4         **MR. SHAW:**  COUNSEL HAS ASKED FOR WHAT INFORMATION

5   THAT WE KEEP IN OUR SYSTEM.  WE THINK THAT THAT'S ALREADY A

6   CONFIDENTIAL INFORMATION REQUEST.

7         **THE COURT:**  OKAY.  HE IS GOING TO BE ALLOWED TO GET

8   THAT.  SMULE MAY NOT BE ALLOWED TO GET THAT.  I'M SORRY, BUT

9   HE'S GOING TO BE ALLOWED TO GET THAT.

10        THE QUESTION IS:  HE'S GOT CERTAIN INFORMATION HE

11  WANTS FROM YOU SPECIFICALLY, AND IT'S LISTED HERE, AND NEEDS TO

12  DISCLOSE IT TO SMULE.  WHICH OF THE THINGS THAT WE'VE JUST GONE

13  THROUGH AND WHY ARE THEY COMPETITIVELY SENSITIVE.

14        **MR. SHAW:**  SO WE THINK THAT ALL THE INFORMATION IN

15  CATEGORY 1, EMAIL ADDRESS AND IP ADDRESS, ARE, FOR EXAMPLE,

16  PRIVATE AND PERSONAL INFORMATION OF OUR USERS.

17        **THE COURT:**  OKAY.  SO THAT'S NOT MY QUESTION.  MY

18  QUESTION IS WHICH ARE COMPETITIVELY SENSITIVE?  BECAUSE THE

19  ISSUE OF PRIVACY I WILL TAKE CARE OF WITH AN INJUNCTION APPLIES

20  TO SMULE.  SO I'M NOT -- THAT IS -- I MEAN, I'M NOT GOING TO

21  EXPOSE MORE THAN IS NECESSARY, BECAUSE I THINK THE NEED HAS TO

22  BE BALANCED.

23        BUT YOU MADE AN ARGUMENT THAT IT'S COMPETITIVELY

24  SENSITIVE INFORMATION, AND I'M JUST NOT SEEING COMPETITIVELY

25  SENSITIVE INFORMATION.

1          **MR. SHAW:**  SURE, YOUR HONOR.  I CAN ANSWER.  THERE IS

2     A CASE THAT WE CITED CALLED *GONZALEZ VERSUS GOOGLE*.

3          **THE COURT:**  YEAH.

4          **MR. SHAW:**  WHERE THE DISTRICT COURT OPINED THAT

5     INFORMATION -- A CERTAIN AMOUNT OF INFORMATION MAY NOT

6     NECESSARILY BE THAT COMMERCIALLY SENSITIVE; BUT IN THE

7     AGGREGATE, THAT CAN BECOME HIGHLY SENSITIVE.

8          AND I DON'T KNOW IF THE RECORD SHOWS, BUT I CAN

9     REPRESENT THAT THE VARIOUS COPYRIGHT OWNERS WITH SMULE BEHIND

10    THEM HAVE ISSUED AT LEAST TWO SUBPOENAS ON STARMAKER.

11         **THE COURT:**  YEAH.

12         **MR. SHAW:**  SO WE JUST THINK THAT THIS IS A SECOND

13    (INDISCERNIBLE) IF THEY ARE ALLOWED TO HAVE THE SAME PROTECTIVE

14    ORDER THAT ALLOWS THEM TO HAVE LITTLE PIECES OF INFORMATION AND

15    LITTLE PIECES OF INFORMATION OVER TIME.  IN THE AGGREGATE THAT

16    CAN BECOME COMMERCIALLY SENSITIVE, AS WHAT THE JUDGE IN

17    THE *GONZALEZ* OPINION HAS RENDERED.

18         **THE COURT:**  SO WHY DO I CARE ABOUT THAT?  THIS IS ONE

19    CASE.  THIS IS ONE SUBPOENA THAT'S IN FRONT OF ME.  IF SOME

20    OTHER JUDGE THINKS, YOU KNOW, THAT WE NOW HAVE TOO MANY THINGS

21    GOING ON -- I MEAN, I'M NOT ASKING TO BE -- THEY'RE NOT ASKING

22    FOR ME TO ORDER YOU TO PRODUCE AGGREGATE INFORMATION.  SO YOU

23    DON'T -- LET ME DO THE FLIP SIDE OF THAT.

24         SO YOU DON'T THINK THAT THIS INFORMATION THAT IS

25    SOUGHT HERE, WITHOUT REGARDS TO WHETHER IT'S BEING SOUGHT BY

```
1    SOMEONE ELSE IN A DIFFERENT -- WITH RESPECT TO A DIFFERENT
2    USER, THIS INFORMATION BEING SOUGHT IS NOT ITSELF COMPETITIVELY
3    SENSITIVE.
4         MR. SHAW:  IT'S NOT AS COMMERCIALLY SENSITIVE AS IF
5    THEY WOULD BE IN THE AGGREGATE.
6         THE COURT:  IS THERE ANY COMMERCIAL COMPETITIVE
7    SENSITIVITY TO IT?  I MEAN, ARE THERE ANY TRADE SECRETS HERE
8    THAT THEY'RE ASKING FOR?  IT SOUNDS ALL LIKE VERY VANILLA
9    STUFF, FRANKLY.
10        MR. SHAW:  YOUR HONOR, SO -- YES, FOR EXAMPLE, IF WE
11   WERE TO JUST GIVE EMAIL ADDRESS OR THE IP ADDRESS TO SMULE,
12   WHICH WE ACTUALLY OFFERED AS A COMPROMISE BACK IN MAY --
13        THE COURT:  YEAH.
14        MR. SHAW:  -- WE DON'T HAVE A HAVE A PROBLEM WITH
15   THAT.  BUT IF WE HAVE TO DISCLOSE A LAUNDRY LIST OF ALL THIS
16   INFORMATION LISTED HERE --
17        THE COURT:  YEAH.
18        MR. SHAW:  -- WE FEEL THAT WE ARE DISCLOSING OUR
19   SENSITIVE SYSTEM DESIGN, MEANING THE DATA FIELDS --
20        THE COURT:  SO TELL ME --
21        MR. SHAW:  YES, YOUR HONOR.
22        THE COURT:  YOU'RE NOT GOING TO GIVE THEM -- YOU'RE
23   GOING TO GIVE IT IN WHATEVER FORMAT YOU'RE GIVING IT, BECAUSE
24   THEY WANT THE INFORMATION MORE THAN THEY WANT THE DOCUMENTATION
25   OF THE INFORMATION.  THEY CAN GET TO THE DOCUMENTATION OF THE
```

1    INFORMATION ONCE THEY TRACK IT DOWN AND FIGURE OUT WHO IS AT

2    FAULT.

3            SO CELLULAR DEVICE I.D. OR IP LOGS WITH RESPECT TO

4    THIS USER, WHY IS THAT YOUR SYSTEMS DESIGN?

5            **MR. SHAW:**  BECAUSE THERE'S MANY DATA FIELDS ABOUT A

6    USER THAT A SERVICE PROVIDER LIKE SMULE OR STARMAKER CAN

7    COLLECT, AND IT'S BY CHOICE.  IT'S BY DESIGN.

8            **THE COURT:**  YEAH.

9            **MR. SHAW:**  AND STARMAKER HAS CHOSEN SPECIFICALLY

10   CERTAIN FIELDS AND NAMES OF THE FIELDS THAT IT HAS CHOSEN TO

11   COLLECT AND GATHER IN ITS SYSTEM, AND, THEREFORE, WE THINK THAT

12   REVEALS THE INNER WORKING OF THE BUSINESS.

13           **THE COURT:**  OKAY.  SO I GUESS I'M NOT UNDERSTANDING.

14           IP LOGS, LET'S TAKE AN IP LOG.  THAT IS A LOG OF ALL

15   OF THE INTERNET PROTOCOL ADDRESSES THAT ARE ASSOCIATED WITH

16   THIS USER OVER TIME, OR SOMETHING LIKE THAT.  YOU THINK YOU

17   PRINT OUT THOSE, THAT'S COMMERCIALLY SENSITIVE?

18           **MR. SHAW:**  BY ITSELF, NO, YOUR HONOR.

19           **THE COURT:**  OKAY.  GOOD.  SO SAME WITH WEB SERVER

20   LOGS, WHICH I GUESS IS A VERY SIMILAR THING.  THE PROFILE NAMES

21   OF LINKED MEDIA ACCOUNTS, THAT'S NOT COMMERCIALLY SENSITIVE TO

22   YOU?

23           **MR. SHAW:**  BY ITSELF, NO.

24           **THE COURT:**  NO, OKAY.

25           THE DATE THE ACCOUNT WAS CREATED, THAT'S NOT

```
 1   PARTICULARLY --
 2           MR. SHAW:  COMMERCIALLY, NO.
 3           THE COURT:  -- SENSITIVE?
 4           MR. SHAW:  CORRECT.
 5           THE COURT:  THE DATE -- WHETHER IT'S AN ACTIVE USER
 6   USING ALL OTHER ACCOUNT USER INFORMATION, I'M NOT SURE ABOUT
 7   THAT, BECAUSE I DON'T KNOW WHAT THAT MEANS.
 8           BUT THE IP ADDRESS FROM WHICH THE POST WAS MADE, WHEN
 9   THE POST WAS MADE, TIME STAMP WHEN IT WAS MADE, ANYTHING
10   RELATED TO THE METADATA RELATED TO THE POSTING OF THE SONG,
11   WERE ANY OF THOSE COMPETITIVELY SENSITIVE?
12           MR. SHAW:  BY ITSELF, NO, YOUR HONOR.
13           THE COURT:  OKAY.  AND SO THESE CATEGORIES -- THESE
14   LISTS OF INFORMATION HERE ON EXHIBIT A ARE NOT THEMSELVES --
15   ARE NOT COMPETITIVELY SENSITIVE?
16           MR. SHAW:  COMMERCIALLY.
17           THE COURT:  -- COMMERCIALLY SENSITIVE JUST BY VIRTUE
18   OF BEING PRODUCED PURSUANT TO THIS SUBPOENA, RIGHT?
19           MR. SHAW:  CORRECT.
20           AND IF I MAY, YOUR HONOR, I'D LIKE TO POINT OUT THAT
21   IN CATEGORIES 2 AND 35, MAYBE IT'S NOT A DISCUSSION FOR TODAY,
22   BUT WE DO THINK THAT THE CATCHALL PHRASE "OR OTHER USER ACCOUNT
23   INFORMATION," IN CATEGORY 2, AS WELL AS, "ALL OTHER AVAILABLE
24   INFORMATION AND METADATA RELATING TO THE POSTING," THESE -- I
25   THINK THESE TWO CATCHALL PHRASES ARE OVERBROAD.
```

1            **THE COURT:**  WELL, I'M ACTUALLY NOT QUITE SURE WHAT

2   THEY MEAN, BUT...

3            **MR. CHATTERJEE:**  SO, YOUR HONOR, I CAN CLARIFY THAT.

4            **THE COURT:**  "ALL OTHER USER INFORMATION," YOU MEAN

5   ALL OTHER USER -- IDENTIFYING USER INFORMATION?

6            **MR. CHATTERJEE:**  YEAH.  WHEN YOU FILL OUT A

7   REGISTRATION, YOUR HONOR, THE STARMAKER APPLICATION HAS A BUNCH

8   OF THINGS YOU GOT TO PUT IN, AND IT'S REALLY THE IDENTIFYING

9   INFORMATION SUCH AS THAT THAT PEOPLE WILL PUT IN.

10           **THE COURT:**  OKAY.  SO WE CAN SUBSTITUTE "ALL OTHER

11  USER IDENTIFYING INFORMATION."  WHAT ABOUT, ALL METADATA

12  RELATED TO THE POSTING?  THAT COULD BE -- YOU KNOW, DEPENDING

13  ON HOW THEY DO THAT, METADATA COULD BE THINGS THAT ARE UNIQUE

14  TO THEIR SYSTEM.

15           **MR. CHATTERJEE:**  I THINK THE OPERATIVE WORD HERE IS,

16  "RELATED TO THE POSTING."

17           **THE COURT:**  IT STILL COULD BE RELATED TO THEIR

18  SYSTEM, DON'T YOU THINK --

19           **MR. CHATTERJEE:**  PERHAPS WE SAY SOMETHING THAT WOULD

20  TIE IT TO THE USER, YOUR HONOR.

21           **THE COURT:**  WELL, WHY DON'T -- YOU COULD START WITH

22  DELETING THE LAST "AND ALL OTHER" AND GET THE REST.  MY GUESS

23  IS YOU PROBABLY DON'T NEED BEYOND THAT TO START WITH.  WHAT DO

24  YOU THINK IS GOING TO BE IN THAT METADATA THAT YOU DON'T HAVE

25  FROM CATEGORY 1, 2 AND FIRST PART OF 3?

1          **MR. CHATTERJEE:**  THE IP ADDRESS FROM WHICH THE POST

2   IS MADE IS GOING TO BE THE --

3          **THE COURT:**  YES, YES, I GOT THAT.

4          **MR. CHATTERJEE:**  -- THE KEY THING.

5          **THE COURT:**  AND THE TIME STAMP.

6          **MR. CHATTERJEE:**  I WOULD LIKE TO KNOW AS PART OF THAT

7   THE DEVICE I.D. RELATED INFORMATION ASSOCIATED WITH THE

8   POSTING, THAT'S METADATA.

9          **THE COURT:**  DEVICE I.D. INFORMATION ASSOCIATED.

10          **MR. CHATTERJEE:**  AND ANY WEB SERVER LOGS ASSOCIATED

11   WITH OUR POSTING.

12          **THE COURT:**  (INDISCERNIBLE.)

13          **MR. CHATTERJEE:**  YEAH.  IT DOES HAVE IT THERE.

14          **THE COURT:**  DEVICE I.D. NEEDS TO BE ADDED.

15          **MR. CHATTERJEE:**  I WOULD SAY THE DEVICE I.D. WOULD BE

16   THE CRITICAL ONE.

17          **THE COURT:**  WELL -- AND THE DEVICE I.D. ASSOCIATED

18   WITH THE POSTING IS NOT COMMERCIALLY SENSITIVE FROM STARMAKER'S

19   POINT OF VIEW, RIGHT?

20          **MR. SHAW:**  CORRECT, YOUR HONOR.

21          **THE COURT:**  AND THE USER-IDENTIFYING INFORMATION IS

22   NOT COMMERCIALLY SENSITIVE, RIGHT?

23          **MR. SHAW:**  COULD YOU REPEAT THAT QUESTION, YOUR

24   HONOR.

25          **THE COURT:**  I'M SORRY.  I SOMETIMES MUMBLE.

1          THE USER IDENTIFYING INFORMATION IS NOT -- IF WE WERE

2     TO INSTEAD OF ALL ACCOUNT INFORMATION IN PARAGRAPH 2, YOU PUT

3     "ALL THE USER IDENTIFYING INFORMATION," THAT'S NOT COMMERCIALLY

4     SENSITIVE, RIGHT.

5          **MR. SHAW:**  IF WE WERE TO CHANGE TO A WORD "USER

6     IDENTIFYING INFORMATION," WE JUST THINK IT IS TOO BROAD, AND WE

7     DO NOT KNOW HOW WE CAN GO OUT AND GATHER THIS INFORMATION FOR

8     THE PROPER PARTY.

9          **MR. CHATTERJEE:**  AND, YOUR HONOR, ONE OF THE THINGS

10    THAT WE DID IN THE MEET AND CONFER --

11         **THE COURT:**  YEAH.

12         **MR. CHATTERJEE:**  -- WE SAID, COULD YOU TELL US WHAT

13    CATEGORIES OF INFORMATION THAT YOU KEEP --

14         **THE COURT:**  OKAY.

15         **MR. CHATTERJEE:**  -- BECAUSE THAT WOULD HELP US FIGURE

16    IT OUT.

17         **THE COURT:**  YEAH, OKAY.  WELL, SO -- AND THAT SORT OF

18    THING I THINK IS THE SORT OF THING THAT OUGHT TO BE DISCUSSED

19    BETWEEN OUTSIDE COUNSEL.  I MEAN, I THINK YOU DO HAVE TO HAVE

20    THAT DISCUSSION.  I DON'T THINK THAT INFORMATION GOES TO SMULE.

21         **MR. CHATTERJEE:**  NO, BUT THEY WOULDN'T TELL US.

22         (SIMULTANEOUS COLLOQUY.)

23         **THE COURT:**  -- YOU WOULDN'T DO IT.  BUT YOU HAVE TWO

24    CHOICES, BECAUSE "USER IDENTIFYING INFORMATION" IS A PRETTY

25    WELL UNDERSTOOD SORT OF TERM.  IF YOU CAN'T FIGURE OUT WHAT IT

1   MEANS IN YOUR SYSTEM BECAUSE YOU HAVE CATEGORIES THAT DON'T

2   DIRECTLY CORRESPOND TO IT, OR ARE SLIGHTLY DIFFERENT, OR YOU'RE

3   CONCERNED ABOUT IT, YOU HAVE TWO CHOICES.  YOU CAN PRODUCE

4   EVERYTHING, OR YOU MEET AND CONFER AND SAY, THIS IS THE SORT OF

5   THING THAT WE DO BETWEEN COUNSEL -- YOU KNOW,

6   OUTSIDE-COUNSEL-ONLY SORT OF THING AND HAVE A DISCUSSION ABOUT

7   THAT.

8           OKAY --

9           **MR. SHAW:**  SO, YOUR HONOR, IF I MAY?

10          **THE COURT:**  YES, SURE.

11          **MR. SHAW:**  SO WE ARE TOTALLY OPEN TO FURTHER MEET AND

12   CONFERS IF THERE'S A PROTECTIVE ORDER IN PLACE OR PER YOUR

13   HONOR'S SUGGESTION FOR OUTSIDE COUNSEL ONLY.  WE ARE TOTALLY

14   DEFINITELY UP FOR DISCUSSIONS AS WHAT INFORMATION THAT WE HAVE,

15   AND WE CAN DISCLOSE THAT TO OUTSIDE COUNSEL EYES ONLY.

16           I THINK THE ISSUE HERE IS WE CANNOT MOVE ON IN THIS

17   MATTER WITHOUT A PO.  AND THE OTHER SIDE HAS NOT REALLY AGREED

18   TO ANY PROVISIONS OR PROTECTIONS SUCH THAT WE CAN OPENLY

19   DISCLOSE SUCH INFORMATION TO OUTSIDE EYES ONLY, BECAUSE THE

20   OTHER SIDE HAS INSISTED THAT SMULE, A THIRD PARTY, WHICH IS NOT

21   EVEN A PARTY TO THE SUBPOENA, SHOULD HAVE ANY OF THAT AND WHICH

22   DID MAKE A COMPROMISE.

23          **THE COURT:**  THEY SAID AS PART OF THEIR INVESTIGATION

24   WHO DID THIS, THEY WANT TO ACTUALLY GO TO THE SITE WHERE IT

25   HAPPENED, AND IN ORDER TO DO THAT, THEY NEED TO WORK THE

1    PERSON, THE ENTITY THAT DID IT OR IT WAS POSTED TO FIGURE IT

2    OUT.  WELL, THAT MAKES SENSE TO ME.  AND THEY MIGHT HAVE TO

3    DISCLOSE INFORMATION TO THEM.  THAT ALSO MAKES SENSE TO ME.

4            SO MY TENTATIVE THOUGHT -- I KNEW WE'D GET TO A

5    TENTATIVE EVENTUALLY -- IS THAT WITH THE MODIFICATIONS THAT I

6    SUGGESTED TO THE SUBPOENA, INSTEAD OF ALL OTHER ACCOUNT -- "ALL

7    OTHER USER ACCOUNT INFORMATION" IN PARAGRAPH 2 PUT, "ALL OTHER

8    USER IDENTIFYING INFORMATION," AND IN PLACE ON PARAGRAPH 3 OF

9    "AND ALL OTHER INFORMATION AND METADATA RELATING TO THE POSTING

10   OF THE SONG ON THE STARMAKER SERVICE" SUBSTITUTE, "THE DEVICE

11   I.D. INFORMATION ASSOCIATED WITH THE POSTING."

12           ALL OF THOSE THINGS ARE THE KINDS OF INFORMATION THAT

13   I WOULD BE INCLINED TO GO WITH THE PLAINTIFF'S VERSION OF THIS.

14   THE -- YOU KNOW, THERE MAY BE ANOTHER CATEGORY OF INFORMATION

15   THAT THEY WANT AT SOME POINT, BUT WITH RESPECT TO WHAT'S ASKED

16   HERE, THAT'S FINE.

17           NOW, YOU GET THAT, AND YOU GET MY RULING ON THIS.

18   YOU'RE STILL GOING TO HAVE TO MEET AND CONFER, BECAUSE THIS

19   ONLY APPLIES TO THIS, THE SUBPOENA AS WRITTEN.  AND YOU'RE

20   GOING TO SAY TO HIM, WELL, WE NEED TO HAVE A DISCUSSION ABOUT

21   ALL OTHER ACCOUNT USER INFORMATION, YOU CAN AGREE BETWEEN

22   YOURSELVES THAT YOU'RE GOING TO HAVE A DISCUSSION ABOUT THE WAY

23   THINGS ARE MAINTAINED AT STARMAKER BETWEEN COUNSEL, NOT EVEN

24   FOR DISCLOSURE TO -- NOT FOR DISCLOSURE TO SMULE, OR SOMETHING

25   LIKE THAT, DO THAT.

1          **MR. SHAW:**  SO, YOUR HONOR, IF I MAY MAKE A COMMENT

2     HERE?

3          **THE COURT:**  YEAH.

4          **MR. SHAW:**  SO WE CANNOT THINK OF A GOOD REASON TO WHY

5     SMULE'S OWN TECHNICAL EMPLOYEES OR TECHNICAL PERSONNEL SHOULD

6     BE ABLE TO ANALYZE ANY SO-CALLED ATTACKS BASED ON INFORMATION

7     FROM STARMAKER.  AN EXPERT -- AN ANALYSIS EXPERT OR EVEN THE

8     LAW FIRM AND THEIR CONSULTANTS CAN DO THAT JOB.  SO I CANNOT

9     THINK OF A GOOD REASON WHY SMULE'S INSIDERS SHOULD BE DOING

10    THAT JOB.  AND TO US --

11          **THE COURT:**  WHY DO I NEED TO THINK OF A GOOD REASON?

12          **MR. SHAW:**  BECAUSE -- AND I --

13          **THE COURT:**  THIS INFORMATION IS PRODUCIBLE PURSUANT

14    TO THE DMCA.  THERE'S NO QUESTION.  THERE'S NOT AN ISSUE.  IT

15    CAN BE USED BY THEM TO ENFORCE THEIR RIGHTS UNDER TITLE 17.

16    THERE'S NO ISSUE.  NONE OF IT IS COMPETITIVELY SENSITIVE.  WE

17    JUST SPENT TEN MINUTES ESTABLISHING THAT.

18          WHY DO I NEED A GOOD REASON?  AND I HAVE A GOOD

19    REASON.  COUNSEL SAID WE NEED THEIR ASSISTANCE AS A TECHNICAL

20    MATTER.  THAT'S FINE.  YOU DISAGREE.  YOU THINK IT CAN'T BE

21    DONE.  WHY DO I EVEN HAVE TO DO THAT ANALYSIS?

22          **MR. SHAW:**  YES, YOUR HONOR.  THERE IS, I THINK, AT

23    LEAST TWO MAIN REASONS, AND IF I MAY, I CAN SHOW YOU SOME

24    POWERPOINT WITH THE STATUTE, OR I CAN SHOW YOU ON THE SLIDES.

25          **THE COURT:**  NO SLIDES, NO POWERPOINT.

 1          **MR. SHAW:**  SURE.

 2          **THE COURT:**  MAKE YOUR ARGUMENT.

 3          **MR. SHAW:**  SURE, YOUR HONOR.

 4          SO, NUMBER ONE, UNDER SECTION 512(H), THEIR MAIN

 5  ARGUMENT IS THAT SMULE IS THE PERSON AUTHORIZED.

 6          **THE COURT:**  THAT'S A BAD ARGUMENT.  I DISPOSED OF

 7  THAT ARGUMENT.

 8          **MR. SHAW:**  OKAY.

 9          **THE COURT:**  IT'S GONE.

10          **MR. SHAW:**  OKAY.  AND THEN --

11          **THE COURT:**  BUT THERE'S NOTHING IN 512(H) THAT SAYS

12  YOU CAN'T SHOW IT TO SOMEONE ELSE.

13          **MR. SHAW:**  BUT 512(H) SPECIFICALLY -- 512(H)(3) AND

14  (5) SAYS THAT YOU CAN DISCLOSE THE INFORMATION TO THE COPYRIGHT

15  OWNER OR A PERSON AUTHORIZED BY THE COPYRIGHT OWNER.

16          **THE COURT:**  WELL, IT SAYS THAT YOU CAN DISCLOSE IT TO

17  SOMEONE.  IT DOESN'T SAY -- THEN THE COPYRIGHT OWNER GETS TO DO

18  WHATEVER IT NEEDS TO DO TO ENFORCE ITS RIGHTS UNDER TITLE 17.

19  RIGHT?  THERE'S NO RESTRICTIONS.  WHERE ARE THE RESTRICTIONS IN

20  THE STATUTE ABOUT WHERE THE SUBPOENAING PARTY GETS TO DISCLOSE

21  THE INFORMATION?

22          **MR. SHAW:**  CORRECT.  AND THEN MY SECOND MAIN POINT.

23          **THE COURT:**  NO, NO, NO.  THAT'S A QUESTION.  WHERE IN

24  THE STATUTE ARE THERE ANY RESTRICTIONS ON WHAT HE DOES, THAT IS

25  TO SAY THE COPYRIGHT OWNER DOES, THE COPYRIGHT OWNER WHOSE NAME

1  I CAN'T PRONOUNCE?

2          **MR. SHAW:**  YOU'RE ABSOLUTELY RIGHT.  THERE IS -- IN

3  THE FOUR CORNERS OF THE STATUTE, THERE'S NO RULE THAT PROHIBITS

4  WHAT THE COPYRIGHT OWNER CAN DO WITH HER INFORMATION.

5          **THE COURT:**  I MEAN, OTHER THAN IT HAS TO BE IN

6  CONNECTION WITH ENFORCEMENT OF THEIR COPYRIGHTS.

7          **MR. SHAW:**  YES.  BUT WE JUST THINK THAT IF SMULE IS

8  ALLOWED TO HAVE OUR CONFIDENTIAL INFORMATION, I THINK THAT

9  WOULD BE AGAINST PUBLIC POLICY.  SO, YOUR HONOR, AS YOU KNOW,

10  STARMAKER IS A DIRECT COMPETITOR OF SMULE.

11          **THE COURT:**  WELL, THAT'S WHY I ASK ALL THESE

12  QUESTIONS ABOUT WHETHER OR NOT ANYTHING IS COMPETITIVELY

13  SENSITIVE.  I THINK YOU'VE GOT A -- SO, I ALWAYS -- I ALWAYS

14  KNOW THAT WE'RE GETTING DOWN TO THE NITTY GRITTY WHEN SOMEONE

15  SAYS IT'S PUBLIC POLICY, AND WE'RE ENTERING THE TERRITORY.

16          **MR. SHAW:**  AND, ALSO, YOUR HONOR, WE WOULD LIKE TO

17  ALSO MAKE SURE THAT WHATEVER THAT WE DO HERE IS IN LINE WITH

18  YOUR OPINION AND THE PREVIOUS OPINION OF THE (INDISCERNIBLE)

19  MANAGEMENT TEAM.

20          **THE COURT:**  MY OTHER OPINION.  HATE THAT.  OKAY.

21  YEAH.

22          **MR. SHAW:**  SO WE FEEL THAT -- YOU KNOW, WE UNDERSTAND

23  THAT THIS OPINION WAS RENDERED IN THE CONTEXT OF A MOTION TO

24  QUASH A SUBPOENA, DMCA SUBPOENA, UNDER THE BASIS OF FIRST

25  AMENDMENT, BUT WE FEEL THAT THE STATEMENTS IN THE OPINION ARE

1  IN LINE WITH WHAT WE ARE --

2          **THE COURT:**  (INDISCERNIBLE) ISN'T HERE TODAY.  I

3  MEAN, I CAN'T REMEMBER THAT OPINION SPECIFICALLY, BUT THERE'S

4  NO --

5          **MR. CHATTERJEE:**  THE USER ISN'T HERE.

6          **THE COURT:**  THE USER'S NOT HERE.  THERE'S NO

7  OBJECTION THAT YOU'RE GOING TO, YOU KNOW, SPOIL MY ANONYMOUS

8  SPEECH, YOU KNOW, OR ANY NUMBER OF THINGS ONE COULD

9  (INDISCERNIBLE) IF ONE WERE A USER, INCLUDING PRIVACY.  THE

10  USER IS NOT HERE.  DID THE USER GET NOTICE OF THIS?  I MEAN,

11  DID YOU SEND AN EMAIL TO THE EMAIL ADDRESS?

12          **MR. SHAW:**  I WILL HAVE TO CONFIRM THAT.

13          **THE COURT:**  MY GUESS YOU IS HAVE.  YOU PROBABLY DID.

14  OKAY.  I APPRECIATE THAT.

15          SO LET ME JUST LOOK AT THIS FOR A SECOND.  REALLY?

16  TEN OFFICERS, DIRECTORS AND EMPLOYEES?  MY GUESS IS IT'S A

17  PRETTY NARROW GROUP AT SMULE THAT YOU REALLY NEED TO HAVE IT GO

18  TO.

19          **MR. CHATTERJEE:**  THERE ARE A HANDFUL, YOUR HONOR.

20          **THE COURT:**  AND WHAT ARE THEY?

21          **MR. CHATTERJEE:**  IT'S THE SECURITY GROUP, AND THEN

22  THERE'S KIND OF THE -- THEY KIND OF COLLABORATE CLOSELY WITH

23  KIND OF THE OPERATIONS TEAM.

24          **THE COURT:**  SO THERE'S NO OFFICERS WHO NEED TO KNOW

25  THIS, NO -- THE DIRECTORS OR OFFICERS OR GENERAL COUNSEL OR ANY

```
1    OF THOSE GUYS.  I DON'T UNDERSTAND WHY THAT --

2            MR. CHATTERJEE:  THE ISSUE IS THIS, YOUR HONOR, IS

3    THAT IF THE METADATA COMES BACK AND OUR SECURITY TEAM LOOKS AT

4    IT AND WE DETERMINE THAT IT ACTUALLY WAS STARMAKER WHO DID IT.

5            THE COURT:  YEAH.

6            MR. CHATTERJEE:  WE WANT TO BE ABLE TO TELL

7    MANAGEMENT THAT, ABOUT THE OUTCOME, NOT NECESSARILY ALL THE

8    UNDERLYING DATA.  AND WE DON'T WANT TO RUN AFIELD OF THE

9    PROTECTIVE ORDER IF WE MAKE THAT ASSESSMENT, BECAUSE WE BELIEVE

10   THAT'S THE CASE.  WE BELIEVE THERE'S A LOT OF EVIDENCE TO SHOW

11   IT, BUT THAT'S A PRETTY MATERIAL EVENT, IF THE DATA THAT WE GET

12   ACTUALLY SHOWS IT'S STARMAKER.

13           THE COURT:  WELL, I'M NOT SURE WHAT THAT LOOKS LIKE

14   YET, AND YOU'RE NOT EITHER, I ASSUME, BUT MAYBE WE DON'T HAVE

15   TO GET TO THAT YET.  BUT IT DOESN'T -- YOU KNOW, IT'S A -- THAT

16   PERSON WOULD NOT BE ABLE TO USE THE INFORMATION ANYWAYS.

17           MR. CHATTERJEE:  THAT'S RIGHT.  THEY'D BE RESTRICTED

18   BY THE PROTECTIVE ORDER.

19           THE COURT:  SO WHAT'S THE UTILITY IN TELLING THEM?

20           MR. CHATTERJEE:  WELL, BECAUSE IT'S ADVISING

21   MANAGEMENT.  YOU KNOW, WE BELIEVE WE HAVE A SECTION 1201 CLAIM,

22   WHICH IS THE COPYRIGHT INFORMATION SYSTEMS PROTECTION CLAIM.

23           THE COURT:  WELL, FILE IT.  THEN IT WILL BE PUBLIC.

24           MR. CHATTERJEE:  BUT THIS THING WOULD -- THIS

25   INFORMATION WOULD -- YOU KNOW, WOULD DEFINITIVELY SHOW IF IT
```

1    SHOWS IT'S STARMAKER.

2            **THE COURT:**  I'M SAYING THAT.  RATHER THAN GO TO

3    MANAGEMENT, YOU JUST FILE A LAWSUIT.

4            **MR. CHATTERJEE:**  RIGHT.  BUT AS YOU CAN IMAGINE,

5    DOING THAT IS A SIGNIFICANT EVENT, SO YOU WANT TO MAKE SURE

6    MANAGEMENT KNOWS WHY YOU'RE DOING THAT.

7            **THE COURT:**  MANAGEMENT -- I DON'T KNOW.  THE

8    COPYRIGHT HOLDER HAS HER OWN CLAIM.  HER OWN CLAIM?

9            **MR. CHATTERJEE:**  HER OWN CLAIM.

10           AND UNDER THE AGREEMENTS THAT EXIST WITH HER, IT

11   IS -- SMULE IS GOING TO BE ASSISTING HER IN FUNDING THAT AND

12   DOING ALL THOSE SORTS OF THINGS TO PURSUE THE CLAIM.  AND,

13   AGAIN, THAT'S A SIGNIFICANT ENOUGH EVENT THAT WE'D WANT TO AT

14   LEAST APPRISE MANAGEMENT AS TO THE REASONS WHY.  WE DON'T NEED

15   TO GO THROUGH THE DETAILS OF ALL THE NITTY GRITTYS.

16           **THE COURT:**  ALL RIGHT.  ANYTHING ELSE ANYONE WANTS TO

17   SAY?

18           **MR. SHAW:**  YES, YOUR HONOR, IF I MAY?

19           SO DO YOU THINK WE CAN HAVE AN OPPORTUNITY TO MEET

20   AND CONFER AS TO WHETHER CATEGORIES 1, 2, 3 OF THE SUBPOENAS

21   ARE OVERBROAD?  DO WE HAVE ANOTHER OPPORTUNITY, OR YOUR HONOR

22   IS INCLINED TO RULE ON THAT TODAY?

23           **THE COURT:**  THAT'S NOT REALLY BEFORE ME.

24           **MR. SHAW:**  OKAY.

25           **THE COURT:**  WHAT IS BEFORE ME IS A PROTECTIVE ORDER.

1          **MR. SHAW:**  OKAY.

2          **THE COURT:**  AND, YOU KNOW, WHAT MY RULING IS GOING TO

3    BE -- MIGHT AS WELL GET IT OUT THERE -- IS THAT AS MODIFIED BY

4    COUNSEL, THE SUBPOENA AS MODIFIED ON THE RECORD HERE.  OKAY.

5    AS MODIFIED, I'M SATISFIED THAT THE -- THAT THE FORM OF

6    PROTECTIVE ORDER PROPOSED BY THE -- BY THE COPYRIGHT HOLDER IS

7    ADEQUATE FOR PROTECTION.  THAT'S THE ONE THAT I WOULD HAVE YOU

8    ALL PUT TOGETHER.

9          AND, YOU KNOW, THEN WHAT HAPPENS AFTER THAT IS, YOU

10   KNOW, SOME DISCUSSION ABOUT OTHER THINGS.  YOU KNOW, THAT'S

11   FINE.  THERE'S NO MOTION TO ENFORCE IT, AND WE HAVEN'T TALKED

12   ABOUT THESE DETAILS.  BUT I THINK IT'S BEEN NARROWED ENOUGH

13   THAT YOU'RE GOING TO HAVE A VERY DIFFICULT TIME WITH THE

14   OVERBREADTH ISSUE, BUT I DON'T KNOW THE DETAILS OF IT.  NOBODY

15   HAS TALKED ABOUT THE DETAILS OF IT.  SO YOU'RE GOING TO MEET

16   AND CONFER ABOUT THAT OF COURSE.

17          **MR. CHATTERJEE:**  YOUR HONOR, I ACTUALLY THINK THAT

18   ISSUE IS DONE, BECAUSE WE'RE HERE TO TRY TO GET THIS PRODUCED.

19   THE SUBPOENA HAS BEEN PENDING FOR QUITE A WHILE.  IF THEY

20   WANTED TO RAISE THOSE ISSUES, THEY SHOULD HAVE BROUGHT IT IN

21   THE COURSE OF THESE PROCEEDINGS TO COME IN FRONT OF YOU.

22          **THE COURT:**  SO WHAT OTHER -- WHY -- WHAT OBJECTIONS

23   DO YOU HAVE OTHER THAN WHAT YOU'VE RAISED?

24          **MR. SHAW:**  SO WE -- RIGHT.  SO WE DON'T THINK THE

25   PURPOSES FOR TODAY IS TO DISCUSS THE OBJECTIONS TO THE BREADTH

1  AND SCOPE OF THE SUBPOENA.

2          **THE COURT:**  SO THAT'S NOT MY QUESTION TO YOU.  MY

3  QUESTION IS:  WHAT OTHER OBJECTIONS DO YOU HAVE?  WHAT'S YOUR

4  BREADTH AND SCOPE OBJECTION?

5          **MR. SHAW:**  WE DON'T HAVE ANY OBJECTION AS TO THE

6  PROTECTIVE ORDER ISSUES, BUT WE DO HAVE --

7          **THE COURT:**  WELL, LET ME ASK YOU THIS:  WHAT'S YOUR

8  OBJECTION TO THE NAMES, ADDRESSES, TELEPHONE NUMBERS, EMAIL

9  ADDRESSES, IP ADDRESSES, IP LOGS, WEB SERVERS, AND PROFILE, THE

10  NAMES LINKED TO SOCIAL MEDIA ACCOUNTS, SUCH AS FACEBOOK, FOR

11  THE USER IDENTIFIER?

12          **MR. SHAW:**  SO, YOUR HONOR, THE STATUTORY LANGUAGE OF

13  512(H) IS INFORMATION SUFFICIENT TO IDENTIFY THE ALLEGED

14  INFRINGER.  WE JUST DON'T THINK THAT ALL OF THIS INFORMATION IS

15  NECESSARY, AND I THINK COUNSEL CAN MEET AND CONFER IN GOOD

16  FAITH AS TO WHAT'S SUFFICIENT.

17          **THE COURT:**  I DON'T -- WHY SHOULD WE GO THROUGH THIS

18  AGAIN?

19          **MR. SHAW:**  BECAUSE I -- YOU KNOW, THERE'S ACTUALLY A

20  CASE FROM DISTRICT COURT IN SOUTHERN CALIFORNIA THAT ACTUALLY

21  RESTRICTED THE SCOPE, AND WE FELT THAT'S --

22          **THE COURT:**  BUT WHY IS THAT NOT BEFORE ME?  WHY ARE

23  WE HERE JUST FUSSING ABOUT THIS AND NOT FUSSING ABOUT THAT?

24          **MR. SHAW:**  BECAUSE, YOUR HONOR, THE JOINT LETTER WAS

25  ABOUT THE PROTECTIVE ORDER, AND WE THOUGHT WE WERE HERE TO

1    DISCUSS THE SCOPE OF THAT.

2              **THE COURT:**  I'LL GIVE YOU THE -- THAT'S ACTUALLY

3    CORRECT.  THE JOINT LETTER IS JUST ABOUT THE SCOPE OF THE

4    PROTECTIVE ORDER, AND THAT'S FINE, BUT I WILL GIVE YOU THIS

5    GUIDANCE.  YOU'RE GOING TO HAVE TO COME BEFORE ME ON ONE OF

6    THESE JOINTS -- IF YOU COME BACK WITH ANOTHER JOINT LETTER.

7    AND IF YOU RAISE THE KIND OF ARGUMENT THAT YOU JUST RAISED, YOU

8    ARE VERY LIKELY TO LOSE.  AND IF I THINK IT'S A BAD ARGUMENT, I

9    WILL SANCTION YOU.  OKAY?

10             I WANT YOU TO BE VERY CAREFUL WITH THAT, BECAUSE I'M

11   NOT UNFAMILIAR WITH THESE TERMS, AND THEY DO MAKE SENSE TO ME,

12   AND IT'S -- IT IS THE KIND OF THING SOME PEOPLE ASK FOR WHEN

13   THEY'RE DOING THIS -- AN INVESTIGATION INTO HOW POSTINGS ARE

14   MADE.

15             NOW, YOU MAY THINK IT'S NOT QUITE NECESSARY, BUT I

16   WILL TELL YOU YOU HAVE AN UPHILL BATTLE WITH THAT.  SO I WOULD

17   BE VERY CAUTIOUS ABOUT RAISING THESE THINGS.  I'M NOT GOING TO

18   RULE ON THEM.  I DON'T THINK I'M CALLED UPON TO RULE ON THEM.

19   IT WOULDN'T BE FAIR FOR ME TO RULE ON THEM.

20             BUT I DO WANT TO GIVE YOU A CAUTIONARY TALE THAT I

21   DON'T LIKE WHEN PEOPLE ARE -- OVERBREADTH IS MY LEAST FAVORITE

22   ARGUMENT, MY LEAST FAVORITE ARGUMENT.  IN GENERAL, I OVERRULE

23   OVERBREADTH OBJECTIONS BECAUSE THEY DON'T MATTER.

24             WE'VE ALREADY ESTABLISHED NONE OF THIS INFORMATION IS

25   COMPETITIVELY SENSITIVE.  WE'VE ALREADY ESTABLISHED THAT THE

1   ACTUAL POSTER IS NOT HERE OBJECTING.  AND, IN ANY EVENT, THOSE

2   PRIVACY RIGHTS WOULD BE OUTWEIGHED BY THE NEED FOR INFORMATION

3   HERE.

4           SO YOU'RE JUST TALKING ABOUT RELEVANCE, OVERBREADTH.

5   RELEVANCE, OVERBREADTH, IN MY VIEW, IS THE WEAKEST POSSIBLE

6   OBJECTION.  SO I WOULD ENCOURAGE YOU NOT DO IT, UNLESS IT'S

7   REALLY CRITICAL INFORMATION, WHICH I THINK IS REALLY UNLIKELY

8   SINCE WHAT'S REALLY CRITICAL INFORMATION -- WE'VE ALREADY HAD

9   THE DISCUSSION OF WHAT'S REALLY CRITICAL TO THE COMPANY, YOUR

10  COMPANY.  SO I JUST CAUTION YOU WITH THAT.

11          SO ALL I'M GOING TO RULE ON IS THE SUBPOENA MODIFIED

12  AS STIPULATED AND THE PROTECTIVE ORDER.  JUST BE CAUTIOUS ABOUT

13  WHAT ELSE YOU'RE GOING TO DO.  SO YOU CAN SUBMIT TO ME A

14  REVISED FORM OF PROTECTIVE ORDER, AND I'LL SIGN IT.

15          **MR. SHAW:**  UNDERSTOOD, YOUR HONOR.

16          **THE COURT:**  COUNSEL HAS GOT ONE MORE THING.

17          **MR. WALDROP:**  (INDISCERNIBLE) WILL MAKE SURE

18  (INDISCERNIBLE).

19          **THE COURT:**  PLEASE.

20          **MR. WALDROP:**  YOUR HONOR, YOUR HONOR, I'D LIKE --

21          **THE COURT:**  WE LIKE THE OLDER GUYS TO GET A CHANCE

22  TOO.

23          **MR. WALDROP:**  I'M PROBABLY OLDER THAN NEEL, EVEN

24  THOUGH I HAVE LESS HAIR.  NEEL STILL HAS HIS HAIR.

25  (INDISCERNIBLE.)

1              (SIMULTANEOUS COLLOQUY.)

2          **THE COURT:**  LOOK AT THE COLOR OF HIS HAIR.  WELL, I

3    CAN TELL.

4          **MR. WALDROP:**  USED TO BE TALLER THAN NEEL.  I USED TO

5    BE TALLER THAN NEEL ABOUT TWO YEARS AGO.

6          **THE COURT:**  THAT HAPPENS TO ALL OF US, TOO.

7          **MR. WALDROP:**  YOUR HONOR, I JUST WANT TO STATE, YOUR

8    HONOR, I WANT TO THANK YOU FOR YOUR TIME.  I WANTED TO MAKE

9    SURE THAT WE WERE CLEAR WITH THE COURT THAT WE HAVE ACTED, AND

10   WE BELIEVE WE CONTINUE TO ACT, IN GOOD FAITH WITH NEEL.  WE

11   HAVE BEEN TRYING TO NEGOTIATE THESE ISSUES IN GOOD FAITH.  AND

12   WE DON'T WANT TO LEAVE THE COURT WITH ANY IMPRESSION THAT WE'RE

13   PLAYING GAMESMANSHIP OR ANYTHING LIKE THAT, YOUR HONOR.

14         **THE COURT:**  I MENTIONED SANCTIONS AS AN INCENTIVE.

15         **MR. WALDROP:**  I UNDERSTOOD.

16         **THE COURT:**  I'M SURE IT WILL BE.  BUT, YOU KNOW,

17   SOMETIMES CLIENTS CALL THE SHOTS, AND SOMETIMES CLIENTS SAY,

18   WELL, YOU KNOW, I DON'T CARE, I NEED YOU TO DEFEND ME ON THIS;

19   I DON'T WANT TO PRODUCE THAT PIECE OF INFORMATION, SO IF YOU'VE

20   GOT AN OVERBREADTH THING, RAISE IT.  YOU CAN GO BACK TO THE

21   CLIENT AND SAY, WE GOT -- THE JUDGE SAID, AND YOU'LL BE

22   SANCTIONED, WE SHOULDN'T DO THAT.

23         YOU'RE ALL BEING VERY HONEST AND FORTHRIGHT.  I

24   APPRECIATE THAT.

25         **MR. WALDROP:**  YOUR HONOR, THANK YOU VERY MUCH.

1        **THE COURT:**  I KNOW SOMETIMES IT'S DIFFICULT.

2  SOMETIMES IT'S DIFFICULT.  SO THERE YOU GO.  SO GET ME THE

3  REVISED PROTECTIVE ORDER, AND I'LL SIGN IT.

4        **MR. CHATTERJEE:**  THANK YOU, YOUR HONOR.

5        **THE COURT:**  THANK YOU.

6        **MR. SHAW:**  THANK YOU VERY MUCH, YOUR HONOR.

7        **THE COURT:**  YOU CAN HAVE THIS BACK.

8        AND BY THE WAY, NICE JOB.

9        **MR. SHAW:**  THANK YOU, YOUR HONOR.

10       **THE COURT:**  YOU BET.

11       **MR. SHAW:**  THANK YOU, YOUR HONOR.

12       (PROCEEDINGS ADJOURNED AT 11:15 A.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                 **CERTIFICATE OF TRANSCRIBER**

2

3     I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4 TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5 THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6 U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7 PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8 ABOVE MATTER.

9     I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10 RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11 WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12 FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13 ACTION.

14

15                           *jncolumbini*

16            JOAN MARIE COLUMBINI

17              JULY 24, 2018

18

19

20

21

22

23

24

25